Kalpana Srinivasan (CA SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
ksrinivasan@susmangodfrey.com
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Max L. Tribble, Jr. (TX SBN 20213950)
David Peterson (TX SBN 24056123)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002
mtribble@susmangodfrey.com
dpeterson@susmangodfrey.com
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Michael F. Heim (TX SBN 9380923)
Eric Enger (TX SBN 24045833)
Blaine Larson (TX SBN 24083360)
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St., Suite 2100
Houston, Texas 77002
mheim@hpcllp.com
eenger@hpcllp.com
blarson@hpcllp.com
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Attorneys for Plaintiff Intellectual Pixels Limited

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| INTELLECTUAL PIXELS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>SONY INTERACTIVE ENTERTAINMENT LLC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL REQUESTED** |

1.    Plaintiff Intellectual Pixels Limited ("IPL" or "Plaintiff") hereby submits this Complaint against Defendant Sony Interactive Entertainment LLC ("SIE" or "Defendant") and states as follows:

## NATURE OF THE ACTION

2.    Online video gaming is a multi-billion dollar industry in the United States with tens of millions of Americans playing online games on a variety of devices. As video games have become more sophisticated with higher graphical demands, gaming companies have been searching for new technological solutions to deliver these games to any consumer device, while minimizing user-related issues with regard to compatibility and the playability of the games.

3.    As a result, video gaming industry leaders have increasingly begun to move their games to the "cloud" so that users can stream games from a server to game consoles and other non-traditional gaming platform devices like tablets and smartphones. Similarly, it has become desirable to offer solutions that enhance the portability of the game, by streaming games from one device, say a console, to another device like a smartphone or a tablet.

4.    Streaming video games from the cloud has a number of advantages. One of those advantages is that players can avoid having to download the games (which can be very large and frequently updated with large software patches) to their local device, saving time and conserving local storage. In addition, the ability to play games streamed from a visual server in the cloud or streamed from a console or a PC at the home allows users to play those games on devices which would have been underpowered or otherwise be simply incompatible with the game software. For example, streaming allows a game specifically designed to run on a high-end, special-purpose game console to be played on a Windows PC or smartphone.

5.    Cloud-gaming has dominated recent gaming conferences with industry leaders like SIE and others competing to top each other with new announcements and rollouts centered on the ability to play video games on the cloud. Streaming games

from the cloud or a local server at the home (like a game console) have been gaining momentum since around 2014. As reflected in the popular press, the ultimate objective for these industry efforts is to become the "Netflix" for games.

6.     But decades before SIE and others started touting cloud gaming as the new frontier, pioneers in the field of graphics processing invented the fundamental technologies for enabling cloud gaming and streaming graphics applications.

7.     3Dlabs Inc., Ltd. ("3Dlabs")—a leading developer of graphics processing units (GPU's) in the late 1990's and early 2000's—recognized the enormous advantages of being able to stream graphics applications (including games) from a server or cloud to a remote client device in the late 1990's. Excerpts below from confidential 3Dlabs presentations from 2000 and 2001 provide an overview of the 3Dlabs' solution.

8.     Co-founder and CEO of 3Dlabs Osman Kent along with David Baldwin and Nicholas Murphy—3Dlabs' chief architects of graphics processing units—developed and patented this groundbreaking technology. The patents now belong to IPL, which is co-owned by the original founders of 3Dlabs.

9.     The IPL patents are foundational patents in the cloud-gaming and streaming graphics applications space, and have been repeatedly cited in the industry, including in the gaming patents owned by SIE, and in the original patents filed by Gaikai, a company that SIE purchased when it decided to enter the cloud-gaming market.

10.    SIE has been seeking to capitalize on the revolutionary technology that IPL and the inventors developed.

COMPLAINT FOR PATENT INFRINGEMENT

## THE PARTIES

11.   IPL is a company registered in the United Kingdom, with registration number 11840479.  IPL's principal place of business is located at St. Anns Court, St. Anns Hill Road, Chertsey, Surrey, UK KT16 9NW.

12.   IPL is the assignee and owner of the patents at issue in this action, United States Patent Nos. 7,587,520 (the "'520 Patent"), 8,131,826 (the "'826 Patent"), 8,667,093 (the "'093 Patent"), and 9,699,238 (the "'238 Patent") (collectively, the "Patents-in-Suit").

13.   The technology underlying the Patents-in-Suit was developed by 3Dlabs, which was publicly traded on the NASDAQ exchange at the time. 3Dlabs was a prominent developer of graphics processing units (GPU's) in the late 1990's and early 2000's. In 2002, 3Dlabs was acquired by Creative Technology Ltd. ("Creative"), which was also publicly traded on the NASDAQ exchange at that time. Creative, a longtime business partner of 3Dlabs, was and is a leader in the design, manufacture, and distribution of digitized sound and video boards and related multimedia and personal digital entertainment products. The inventors of the Patents-in-Suit were Osman Kent, a co-founder and chief executive officer of 3Dlabs, and David Baldwin and Nicholas Murphy, both chief architects of GPUs at 3Dlabs. Subsequently, the Patents-in-Suit were assigned to Creative. Eventually, the Patents-in-Suit were assigned to IPL, which is co-owned by the original founders of 3Dlabs. Although never commercialized by 3Dlabs or Creative, the concept of cloud gaming and streaming other graphics applications from a server or the cloud to a client device was considered one of the most valuable inventions developed by 3Dlabs.

14.   Sony Interactive Entertainment LLC is a California entity with a registered agent at CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505. On information and belief, SIE is a wholly owned subsidiary of Sony Corporation, a Japanese entity with its principal place of business located at 1-7-1 Konan, Minato-Ku, 108-0075, Japan. Sony Corporation is

COMPLAINT FOR PATENT INFRINGEMENT

a Japanese multinational conglomerate corporation headquartered in Kōnan, Minato, Tokyo. (https://www.playstation.com/en-us/corporate/about/, last visited July 17, 2019).

15.    SIE "is responsible for the PlayStation brand and family of products. PlayStation has delivered innovative products to market since the launch of the first PlayStation in Japan in 1994. The PlayStation family of products and services includes PlayStation 4, PlayStation VR, PlayStation Store, PlayStation Now, PlayStation Vita, and PlayStation Vue. SIE also oversees Worldwide Studios, which is responsible for developing exclusive, world-class games for PlayStation." (https://www.playstation.com/en-us/corporate/about/, last visited July 12, 2019). PlayStation games are streamed by PlayStation Now servers to Sony PlayStation 4 consoles and to PCs that are loaded with suitable client software provided by Sony. PlayStation games also may be streamed from Sony PlayStation 4 consoles to PCs and Mac computers, the PlayStation Vita handheld game player, Sony Xperia phones and tablets, and certain iOS devices, including iPhones and iPads loaded with the Remote Play application provided by Sony.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.*

17.    Venue is proper in the Central District of California, Southern Division because Defendant has committed acts of infringement in Orange County and has a regular and established place of business in Aliso Viejo, California, where the infringing technology relative to PlayStation Now and Sony Remote Play was developed and, on information and belief, continues to be managed. Defendant's acts of infringement include making, using, and selling its PlayStation Now game streaming service, hosting PlayStation games on the PlayStation Now server, and making, using, and selling the Remote Play feature in with PS4 consoles, PS4 games,

and various Sony and third party client devices that have the appropriate Sony client software.

18.     In 2012, Sony Computer Entertainment ("SCE") acquired the cloud-based gaming company Gaikai Inc. ("Gaikai"), located in Aliso Viejo, California, for approximately                                $380                                million. (https://www.forbes.com/sites/tomiogeron/2012/07/02/sony-to-acquire-cloud-gaming-startup-gaikai-for-380-million/#695731696fbc, last visited July 12, 2019). At the time of the Gaikai acquisition, SCE stated that it would "establish a new cloud service, ensuring that it continues to provide users with truly innovative and immersive interactive entertainment experiences." That new cloud service, based on Gaikai streaming technology, was and is marketed as PlayStation Now. (https://gamerant.com/sony-playstation-now-gaikai-cloud-gaming-ps3-ps4/, last visited July 12, 2019); (https://www.geek.com/games/gaikai-streaming-becomes-PlayStation-now-available-this-summer-1581518/, last visited July 12, 2019); (https://www.gamespot.com/gallery/google-stadia-playstation-now-and-more-cloud-gamin/2900-2647/2/, last visited July 12, 2019); (https://www.wired.com/2014/01/playstation-now/, last visited July 12, 2019). At that time, SCE's President promised that the company would "deliver a world-class cloud-streaming service that allows users to instantly enjoy a broad array of content from immersive core games with rich graphics to casual content anytime, anywhere on a variety of internet-connected devices." (https://www.prnewswire.com/news-releases/sony-computer-entertainment-to-acquire-gaikai-inc-a-leading-interactive-cloud-gaming-company-161042365.html, last visited July 12, 2019).

19.     SIE resulted from the combination of SCE and other Sony properties, centralizing various gaming hardware, software, and services. "In April 2016, Sony Computer Entertainment Inc. ("SCEI") and Sony Network Entertainment International LLC ("SNEI") founded Sony Interactive Entertainment LLC ("SIE"), a new company that combined all the business units belonging to SCEI and SNEI,

including hardware, software, content and network services operations." (https://www.sony.net/SonyInfo/IR/library/FY2016_20F_PDF.pdf, last visited July 17, 2019). The cloud-streaming service developed by Gaikai underlies the accused functionalities in this case.

20.     Gaikai is the assignee of U.S. Patent No. 8,147,339 (the "Gaikai Patent"), titled "Systems and Methods of Serving Game Video." The Gaikai Patent post-dates IPL's patents. On information and belief, the Defendant's PlayStation Now incorporates certain technology disclosed in the Gaikai Patent. SIE is the current assignee of the Gaikai Patent.

21.     At the time of the acquisition, Gaikai was located in Aliso Viejo, California. On information and belief, Gaikai's Aliso Viejo facility became a Sony facility, and thereafter, Gaikai employees became SIE employees. SIE currently lists job openings for positions in Aliso Viejo (https://www.playstation.com/en-us/corporate/about/careers/, last visited July 12, 2019), including jobs related to network operations management and control for cloud-based applications, cloud gaming engineering and infrastructure, and cloud back-end engineering. For example, the job listing for Sr. Network Operations Engineer (NetDevOps) at Sony Interactive Entertainment PlayStation identifies Aliso Viejo, CA as the location for the position. The listing states in part:

> Sony Interactive Entertainment, Playstation is leading the cloud gaming revolution, putting console-quality video games on any device.
>
> As a primary member of the Network Engineering team you will be responsible for the **development, support and mid to long term considerations of an advanced global IP network that adheres to the highest standards to provide robust, low latency game streaming services to PlayStation Now customers around the globe**. You will help contribute to an automation first operations team (DevOps) to increase our efficiencies and ability to scale.

(https://boards.greenhouse.io/sonyinteractiveentertainmentplaystation/jobs/1724883, last visited July 12, 2019) (emphasis added). The former Gaikai facility has been

and continues to be a regular and established place of business of the Defendant in Orange County.

22.    The inventor of the Gaikai Patent is David Perry. Mr. Perry served as the CEO of Gaikai at the time it was acquired by SCE. After the acquisition, Mr. Perry served as an employee of Sony Computer Entertainment America LLC until he left the company in June 2017. (https://www.linkedin.com/in/dperry, last visited July 12, 2019). In a 2014 interview, Mr. Perry stated, "Just to be very clear, we only do two things for Sony. We focus on cloud gaming and remote play." (https://www.gameinformer.com/b/features/archive/2014/09/17/gaikai-playstation-now.aspx?PostPageIndex=1, last visited July 12, 2019).

### THE PATENTS-IN-SUIT

23.    The inventions disclosed and claimed in the Patents-in-Suit provide numerous benefits over then-existing graphics rendering systems by implementing an architecture that moves the graphics processing and generation of graphic images to a remotely-located server and away from the client device where the user is playing a video game or utilizing a graphics application.

24.    First, the inventions allow one or more client devices to share a single remote GPU on a server that performs graphics processing and generates images streamed to client devices. Because the generation of the graphic images (which often are in three dimensions) are performed at the server rather than on client devices, multiple client devices may use the resources of a single powerful GPU – either concurrently or allocated on a per session basis. This minimizes the time a user's device must spend on graphics processing locally while still providing the benefit of high-performance gaming by leveraging the remote GPU located on a server. As the patents explain, under prior systems, "additional hardware increases the cost of the client hardware as the graphics hardware must be incorporated and integrated therewith." '520 Patent at 2:53-55.

25. Second, the invention allows those end users who have client devices with even minimal graphics computing capabilities access to high-end graphics processing, including three-dimensional real-time graphics processing. By performing graphics processing at the server rather than at the client, there is no need for each client device to have the most recent GPU chip, or in some instances, to have a GPU at all. Without the patented technology, "for reasons of cost, size, and power consumption, sophisticated three-dimensional graphics are not available on common consumer client devices such as personal digital assistants (PDAs) mobile telephones and set-top boxes used to decode cable and satellite television signals." '520 Patent at 3:3-7.

26. Third, and relatedly, the invention solves issues related to software compatibility by allowing software to run at the server level when the client devices might not otherwise be able to execute the software because of instruction set or operating system limitations of the client device. For example, the invention provides "the ability to provide access to industry standard software on a device which is unable to execute that software." '093 Patent at 9:13-15. By streaming video game images to a client device, it is not necessary that the client device be at all compatible with the video game or the graphics application that is being run on the server.

27. Fourth, the invention allows end users to play games without first needing to download the game to the client device. Downloading games and their frequent large updates requires significant time and storage resources and creates a substantial hindrance to the user enjoying a new game instantly. By maintaining games at the server level and only transmitting the generated images to the client device, time and memory are conserved. Users can maintain control of the game through their user control inputs, while the game processing and image generation is performed remotely on a server.

28. Fifth, the Patents-in-Suit centralize and streamline GPU and software maintenance. As the patents explain, "the software and hardware used to generate 3D

images is in constant flux, and the system must be continually upgraded." '520 Patent at 2:55-58. Upgrades on the client devices as faster graphics processing chips and components become commercially available impose additional costs and burdens on users. *Id*. at 2:57-58. Further, "remote hardware impedes the central maintenance and coordination of configurations of client software, which is an important capability and critical to the product viability of many applications." *Id*. at 2:59-62. The disclosed invention, by maintaining the GPU and associated software at the server, calls for fewer GPUs needed at the client level to monitor, maintain and upgrade, further reducing cost. Further, the user's experience is enhanced because she does not need to continually update software in order to play the latest version of the game.

29.     The inventors had to address and overcome a number of technological hurdles in order to transfer graphics processing from a client device to a separate server capable of handling graphics processing for multiple client devices. For example, the inventors needed to address the manner in which latency should be reduced relative to the interactive graphics applications, the manner in which the exchange of user control inputs and images should be synchronized between the client device and server, the manner in which graphics processing for different client devices should be handled, and the manner in which the client and server devices should be configured to support the remote processing of the control inputs and the images produced in response to those inputs. To support the ability to virtualize the GPU (*i.e.*, making a single physical GPU look like many virtual GPUs), 3Dlabs developed GPUs with very fast context save and restore capabilities so that application threads associated with different client devices would behave as if they had exclusive access to the GPU.

30.     In certain instances, the Asserted Patents specify that the client device sends user input signals (or "image-modifying data") based upon a predetermined duration, and/or for the server to generate and send an image based on a predetermined duration. This period may include a frame rate for providing images

to the client to reduce latency and improve quality of the video/animation provided to the user. The exchange of user control inputs may also be transmitted based on a period predetermined by the system. In this manner, the user input signals and the generated images may be able to be synced to produce a higher quality user experience.

31.     Other claims require a client to transmit a link that identifies the client device to the server. This operation allows the server to allocate resources among different clients. In addition, by identifying the client device and its characteristics, the server is able to authenticate the client device, establish that it remains connected, and provide the optimal format for delivering the image output to minimize the transmission to and processing at the client device.

32.     Other claims require that the server provides three-dimensional graphical images for complex interactive games without requiring the client device to perform any of the three-dimensional graphics processing, making it clear that the server is running and maintaining the game state for a particular game application and performing all of the three-dimensional graphics processing for each client device for that game. Having the server perform all the three-dimensional processing for a game provides a consistent user experience on each client device.

33.     These and other features of the claimed invention provided a significant advance over the existing approach of requiring each client device to handle its own graphics processing.

## THE PLAYSTATION NOW AND SONY REMOTE PLAY SYSTEMS

34.     The PlayStation Now system includes Sony game servers with appropriate server software located in datacenters at strategic locations that are configured to play a supported PlayStation video game at the request of one or more client devices equipped with PlayStation Now client software. Devices that are currently capable of operating as PlayStation clients include PS4 consoles and PCs equipped with a Sony PlayStation Now app. Prior to February 2017, PlayStation

client devices also included certain Sony televisions, including the Sony Bravia TVs, the PlayStation TV, the Sony Vita, the PS3, and certain Sony Blu-ray players. (https://www.polygon.com/2017/2/15/14627922/playstation-now-discontinued-ps3-vita-tv, last visited July 12, 2019). Sony charges a subscription fee for customers to play PlayStation video games using the PlayStation Now system.

35.    The PlayStation Now system and service is based on technology developed by Gaikai, which Sony purchased for $380 million. (https://www.forbes.com/sites/tomiogeron/2012/07/02/sony-to-acquire-cloud-gaming-startup-gaikai-for-380-million/#695731696fbc, last visited July 12, 2019). PlayStation Now was launched, at least in part, based on the inability of the newly launched PS4 consoles to play older PS3 games. (https://www.geek.com/games/gaikai-streaming-becomes-PlayStation-now-available-this-summer-1581518/, last visited July 21, 2019). Because of this lack of backwards capability with its prior PlayStation games, Sony launched the PlayStation Now system and service so customers of the PS4 consoles would be able to play the older, but much more numerous, PS3 games.

36.    The PlayStation Now system and service operates by having the PlayStation Now server perform all or substantially all of the graphics processing for a particular game being played on a client device (currently a PS4 or PC with appropriate Sony software). The image is generated based on the player commands that are generated on separate client devices using a Sony DualShock game controller and transmitted to the server via a high-speed Internet connection. Once the image is generated by the server, it is compressed and transmitted to the client device. The client devices do not perform any additional 3D graphics processing on the images provided by the server, but instead only decompress the compressed images and display them as they arrive at the client device.

COMPLAINT FOR PATENT INFRINGEMENT

**FAQS**

## Streaming

What kind of internet connection do I need to stream games on PS Now?   +

What does streaming mean?   −

With PS Now you can choose to stream or download a game. If you stream it, the game will be streamed from our servers over your internet connection, just like streaming a movie. This means you won't have to download anything to your PS4 or PC and the entire game library is immediately available for you to play as and when you want.

Games are streamed from our servers over your internet connection at a maximum resolution of 720p. Audio for streamed games is available in stereo only; surround sound is not supported.

(https://www.playstation.com/en-gb/explore/playstation-now/how-it-works/,      last visited July 21, 2019).

37.     The Sony Remote Play system and service includes a PlayStation 4 console acting as a server that streams PlayStation 4 games to a client device. Supported client devices include a PC or Mac with suitable Sony Remote Player software, the Sony Vita handheld game device, Sony Xperia phones and tablets, and certain Apple devices (including iPhones and iPads) with compatible Sony Remote Player software. These client devices accept player commands from a Sony DualShock game controller or through an on-screen interface through which the PlayStation game may be played.

38.     The Sony Remote Play system and service are based on Gaikai technology,                                                                                     *see* (https://www.gamasutra.com/view/news/187022/How_Sonys_PlayStation_4_will_leverage_Gaikais_cloud.php, last visited July 12, 2019), except that a PlayStation 4 operates as the server and generates images based on player commands from the client devices that are received over a local area network connection, or in some instances, over the Internet. The PlayStation 4 console compresses the generated

images and transmits them to the client devices over the network connection (the local area network or Internet).

## INFRINGEMENT OF U.S. PATENT NO. 7,587,520

39.     On September 8, 2009, U.S. Patent No. 7,587,520 was duly and legally issued for inventions entitled "Image Display System with Visual Server." IPL was assigned the '520 Patent and continues to hold all rights and interests in the '520 Patent. The '520 Patent was filed on January 4, 2002 as Application No. 10/037,688 and claims priority to Provisional Application 60/263,854, filed on January 24, 2001. A true and correct copy of the '520 Patent is attached hereto as Exhibit 1.

40.     Defendant has directly infringed and continues to directly infringe one or more of the claims of the '520 Patent by its manufacture, use, and sale of its PlayStation Now game streaming service, and through its hosting of PlayStation games on the PlayStation Now server. The infringing components include all PlayStation Now servers and server software and associated Sony and PlayStation client devices and other software that supports PlayStation Now. Defendant also performs the claimed method by making available and hosting PlayStation games via the PlayStation Now service. PlayStation Now is a service that allows subscribers to play various PlayStation games online through an online subscription. Defendant maintains control over both the server and client components of the PlayStation Now network, and in at least some instances, provides both the server-side hardware and software and client-side hardware and software. Individual users may access the PlayStation Now network though either a PS4 console or a compatible PC with a PlayStation DualShock controller. In addition, Sony also made the PlayStation Now service available to the PlayStation Vita, certain Sony Bravia television models, Sony Blu-ray player models, and PS3 consoles. (https://gamerant.com/sony-playstation-now-gaikai-cloud-gaming-ps3-ps4/, last visited July 12, 2019); (https://www.polygon.com/2017/2/15/14627922/playstation-now-discontinued-ps3-vita-tv, last visited July 12, 2019). Commands entered by game players on their

individual client devices are transmitted to central servers, where display images are generated. The generated stream of images is then transmitted back to the client devices and displayed. The games are hosted by servers operated by and/or controlled by Defendant, and for most client devices, those devices are made and sold by Defendant with the purpose of using those devices with the PlayStation Now service.

41.     Defendant has also directly infringed and continues to directly infringe one or more of the claims of the '520 Patent by making, using, or selling its PlayStation Remote Play and Remote Play app. Remote Play is a feature included with the PlayStation PS4 console that allows Sony PlayStation PS4 consoles to transmit their video output to a PC or Mac computer or laptop, a PlayStation Vita handheld video game console, Sony Xperia phones and tablets, and Apple's iPhones and iPads. (https://www.playstation.com/en-gb/explore/ps4/features/remote-play/, last visited July 12, 2019). Similarly, PlayStation users can connect a DualShock controller to various devices, including Android devices, Apple computers, Windows PCs, and iOS devices. Both the PS4 console and the user device are connected to a local area network, including a Wifi network or an Ethernet network, and in some instances, the Internet. Defendant maintains control over both the client and server components of the Remote Play network. Commands entered by game players on their individual devices are transmitted to a PS4 console, where display images are generated based on the player commands. The generated images are then compressed and streamed back to the client devices and displayed. The PlayStation games are hosted by Defendant's PS4 consoles.

42.     In addition, Defendant has induced business partners to design PS4 games with Remote Play capabilities and has induced customers to use the Remote Play service provided with the PS4 consoles and with the various client devices executing the Sony Remote Play client software.  These client devices in many instances constitute Sony products, such as the PlayStation Vita and the Sony Xperia products.            (https://www.playstation.com/en-au/get-help/help-library/apps---

features/playstation-apps---features/ps4--remote-play-for-pc-and-mac/, last visited July 12, 2019). In fact, on information and belief, Defendant has required that all PlayStation 4 games must provide support for Remote Play. (https://www.eurogamer.net/articles/digitalfoundry-sony-mandates-vita-remote-play-for-ps4-games, last visited July 12, 2019). Like PlayStation Now, and on information and belief, the Sony Remote Play feature also is based on Gaikai technology. (https://www.gamasutra.com/view/news/187022/How_Sonys_PlayStation_4_will_leverage_Gaikais_cloud.php, last visited July 12, 2019)

43.     The acts of infringement by Defendant have caused damage to IPL, and IPL is entitled to recover from Defendant the damages sustained by IPL as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of IPL's exclusive rights under the '520 Patent by Defendant has damaged and will continue to damage IPL, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

### INFRINGEMENT OF U.S. PATENT NO. 8,131,826

44.     On March 6, 2012, U.S. Patent No. 8,131,826 was duly and legally issued for inventions entitled "Image Display System with Visual Server." IPL was assigned the '826 Patent and continues to hold all rights and interests in the '826 Patent. The '826 Patent was filed on April 10, 2009 as Application No. 12/538,347, which is a continuation of Application No. 10/037,688, which claims priority to Provisional Application 60/263,854, filed on January 24, 2001. A true and correct copy of the '826 Patent is attached hereto as Exhibit 2.

45.     Defendant has directly infringed and continues to directly infringe one or more of the claims of the '826 Patent by its manufacture, use, and sale of its PlayStation Now game streaming service, and through its hosting of PlayStation games on the PlayStation Now servers. The infringing components include all PlayStation Now servers and server software and associated Sony and PlayStation

client devices and other software that supports PlayStation Now. Defendant also performs the claimed method by making available and hosting PlayStation games via the PlayStation Now service. PlayStation Now is a service that allows subscribers to play various PlayStation games online through an online subscription. Defendant maintains control over both the server and client components of the PlayStation Now network, and in at least some instances, provides both the server-side hardware and software and client-side hardware and software. Individual users may access the PlayStation Now network though either a PS4 console or a compatible PC with a PlayStation DualShock controller. In addition, Sony also made the PlayStation Now service available to the PlayStation Vita, certain Sony Bravia television models, Sony Blu-ray player models, and PS3 consoles. (https://gamerant.com/sony-playstation-now-gaikai-cloud-gaming-ps3-ps4/, last visited July 12, 2019); (https://www.polygon.com/2017/2/15/14627922/playstation-now-discontinued-ps3-vita-tv, last visited July 12, 2019). Commands entered by game players on their individual client devices are transmitted to central servers, where display images are generated. The generated stream of images is then transmitted back to the client devices and displayed. The games are hosted by servers operated by and/or controlled by Defendant, and for most client devices, those devices are made and sold by Defendant with the purpose of using those devices with the PlayStation Now service.

46.     Defendant has also directly infringed and continues to directly infringe one or more of the claims of the '826 Patent by making, using, or selling its PlayStation Remote Play and Remote Play app. Remote Play is a feature included with the PlayStation PS4 console that allows Sony PlayStation PS4 consoles to transmit their video output to a PC or Mac computer or laptop, a PlayStation Vita handheld video game console, Sony Xperia phones and tablets, and Apple's iPhones and iPads. (https://www.playstation.com/en-gb/explore/ps4/features/remote-play/, last visited July 12, 2019). Similarly, PlayStation users can connect a DualShock controller to various devices, including Android devices, Apple computers, Windows

PCs, and iOS devices. Both the PS4 console and the user device are connected to a local area network, including a Wifi network or an Ethernet network, and in some instances, the Internet. Defendant maintains control over both the client and server components of the Remote Play network. Commands entered by game players on their individual devices are transmitted to a PS4 console, where display images are generated based on the player commands. The generated images are then compressed and streamed back to the client devices and displayed. The PlayStation games are hosted by Defendant's PS4 consoles.

47.   In addition, Defendant has induced business partners to design PS4 games with Remote Play capabilities and has induced customers to use the Remote Play service provided with the PS4 consoles and with the various client devices executing the Sony Remote Play client software.   These client devices in many instances constitute Sony products, such as the PlayStation Vita and the Sony Xperia products.              (https://www.playstation.com/en-au/get-help/help-library/apps---features/playstation-apps---features/ps4--remote-play-for-pc-and-mac/, last visited July 12, 2019).   In fact, on information and belief, Defendant has required that all PlayStation      games      must      provide      support      for      Remote      Play. (https://www.eurogamer.net/articles/digitalfoundry-sony-mandates-vita-remote-play-for-ps4-games, last visited July 12, 2019).   Like PlayStation Now, and on information and belief, the Sony Remote Play feature also is based on Gaikai technology. (https://www.gamasutra.com/view/news/187022/How_Sonys_PlayStation_4_will_leverage_Gaikais_cloud.php, last visited July 12, 2019).

48.   The acts of infringement by Defendant have caused damage to IPL, and IPL is entitled to recover from Defendant the damages sustained by IPL as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of IPL's exclusive rights under the '826 Patent by Defendant has damaged and will

1    continue to damage IPL, causing irreparable harm, for which there is no adequate

2    remedy at law, unless enjoined by this Court.

3              **INFRINGEMENT OF U.S. PATENT NO. 8,667,093**

4         49.    On March 4, 2014, U.S. Patent No. 8,667,093 was duly and legally

5    issued for inventions entitled "Image Display System with Visual Server." IPL was

6    assigned the '093 Patent and continues to hold all rights and interests in the '093

7    Patent. The '093 Patent was filed on November 15, 2011 as Application No.

8    13/296,776, which is a continuation of Application No. 12/538,347, which is a

9    continuation of Application No. 10/037,688, which claims priority to Provisional

10   Application 60/263,854, filed on January 24, 2001. A true and correct copy of the

11   '093 Patent is attached hereto as Exhibit 3.

12        50.    Defendant has directly infringed and continues to directly infringe one

13   or more of the claims of the '093 Patent by its manufacture, use, and sale of its

14   PlayStation Now game streaming service, and through its hosting of PlayStation

15   games on the PlayStation Now servers. The infringing components include all

16   PlayStation Now servers and server software and associated Sony and PlayStation

17   client devices and other software that supports PlayStation Now.  Defendant also

18   performs the claimed method by making available and hosting PlayStation games via

19   the PlayStation Now service. PlayStation Now is a service that allows subscribers to

20   play various PlayStation games online through an online subscription. Defendant

21   maintains control over both the server and client components of the PlayStation Now

22   network, and in at least some instances, provides both the server-side hardware and

23   software and client-side hardware and software. Individual users may access the

24   PlayStation Now network though either a PS4 console or a compatible PC with a

25   PlayStation DualShock controller. In addition, Sony also made the PlayStation Now

26   service available to the PlayStation Vita, certain Sony Bravia television models, Sony

27   Blu-ray player models, and PS3 consoles. (https://gamerant.com/sony-playstation-

28   now-gaikai-cloud-gaming-ps3-ps4/,           last       visited       July       12,       2019);

(https://www.polygon.com/2017/2/15/14627922/playstation-now-discontinued-ps3-vita-tv, last visited July 12, 2019). Commands entered by game players on their individual client devices are transmitted to central servers, where display images are generated. The generated stream of images is then transmitted back to the client devices and displayed. The games are hosted by servers operated by and/or controlled by Defendant, and for most client devices, those devices are made and sold by Defendant with the purpose of using those devices with the PlayStation Now service.

51.     Defendant has also directly infringed and continues to directly infringe one or more of the claims of the '093 Patent by making, using, or selling its PlayStation Remote Play and Remote Play app. Remote Play is a feature included with the PlayStation PS4 console that allows Sony PlayStation PS4 consoles to transmit their video output to a PC or Mac computer or laptop, a PlayStation Vita handheld video game console, Sony Xperia phones and tablets, and Apple's iPhones and iPads. (https://www.playstation.com/en-gb/explore/ps4/features/remote-play/, last visited July 12, 2019). Similarly, PlayStation users can connect a DualShock controller to various devices, including Android devices, Apple computers, Windows PCs, and iOS devices. Both the PS4 console and the user device are connected to a local area network, including a Wifi network or an Ethernet network, and in some instances, the Internet. Defendant maintains control over both the client and server components of the Remote Play network. Commands entered by game players on their individual devices are transmitted to a PS4 console, where display images are generated based on the player commands. The generated images are then compressed and streamed back to the client devices and displayed. The PlayStation games are hosted by Defendant's PS4 consoles.

52.     In addition, Defendant has induced business partners to design PS4 games with Remote Play capabilities and has induced customers to use the Remote Play service provided with the PS4 consoles and with the various client devices executing the Sony Remote Play client software.  These client devices in many

instances constitute Sony products, such as the PlayStation Vita and the Sony Xperia products.                    (https://www.playstation.com/en-au/get-help/help-library/apps---features/playstation-apps---features/ps4--remote-play-for-pc-and-mac/, last visited July 12, 2019).  In fact, on information and belief, Defendant has required that all PlayStation games must provide support for Remote Play. (https://www.eurogamer.net/articles/digitalfoundry-sony-mandates-vita-remote-play-for-ps4-games, last visited July 12, 2019).  Like PlayStation Now, and on information and belief, the Sony Remote Play feature also is based on Gaikai technology. (https://www.gamasutra.com/view/news/187022/How_Sonys_PlayStation_4_will_leverage_Gaikais_cloud.php, last visited July 12, 2019)

53.    The acts of infringement by Defendant have caused damage to IPL, and IPL is entitled to recover from Defendant the damages sustained by IPL as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of IPL's exclusive rights under the '093 Patent by Defendant has damaged and will continue to damage IPL, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

**INFRINGEMENT OF U.S. PATENT NO. 9,699,238**

54.    On July 4, 2017, U.S. Patent No. 9,699,238 was duly and legally issued for inventions entitled "Image Display System with Visual Server." IPL was assigned the '238 Patent and continues to hold all rights and interests in the '238 Patent. The '238 Patent was filed on February 27, 2014 as Application No. 14/192,789, which is a continuation of Application No. 13/296,776, which is a continuation of Application No. 12/538,347, which is a continuation of Application No. 10/037,688, which claims priority to Provisional Application 60/263,854, filed on January 24, 2001. A true and correct copy of the '238 Patent is attached hereto as Exhibit 4.

55.    Defendant has directly infringed and continues to directly infringe one or more of the claims of the '238 Patent by its manufacture, use, and sale of its

PlayStation Now game streaming service, and through its hosting of PlayStation games on the PlayStation Now servers. The infringing components include all PlayStation Now servers and server software and associated Sony and PlayStation client devices and other software that supports PlayStation Now.  Defendant also performs the claimed method by making available and hosting PlayStation games via the PlayStation Now service. PlayStation Now is a service that allows subscribers to play various PlayStation games online through an online subscription. Defendant maintains control over both the server and client components of the PlayStation Now network, and in at least some instances, provides both the server-side hardware and software and client-side hardware and software. Individual users may access the PlayStation Now network though either a PS4 console or a compatible PC with a PlayStation DualShock controller. In addition, Sony also made the PlayStation Now service available to the PlayStation Vita, certain Sony Bravia television models, Sony Blu-ray player models, and PS3 consoles. (https://gamerant.com/sony-playstation-now-gaikai-cloud-gaming-ps3-ps4/, last visited July 12, 2019); (https://www.polygon.com/2017/2/15/14627922/playstation-now-discontinued-ps3-vita-tv, last visited July 12, 2019). Commands entered by game players on their individual client devices are transmitted to central servers, where display images are generated. The generated stream of images is then transmitted back to the client devices and displayed. The games are hosted by servers operated by and/or controlled by Defendant, and for most client devices, those devices are made and sold by Defendant with the purpose of using those devices with the PlayStation Now service.

56.     Defendant has also directly infringed and continues to directly infringe one or more of the claims of the '238 Patent by making, using, or selling its PlayStation Remote Play and Remote Play app. Remote Play is a feature included with the PlayStation PS4 console that allows Sony PlayStation PS4 consoles to transmit their video output to a PC or Mac computer or laptop, a PlayStation Vita handheld video game console, Sony Xperia phones and tablets, and Apple's iPhones

and iPads. (https://www.playstation.com/en-gb/explore/ps4/features/remote-play/, last visited July 12, 2019). Similarly, PlayStation users can connect a DualShock controller to various devices, including Android devices, Apple computers, Windows PCs, and iOS devices. Both the PS4 console and the user device are connected to a local area network, including a Wifi network or an Ethernet network, and in some instances, the Internet. Defendant maintains control over both the client and server components of the Remote Play network. Commands entered by game players on their individual devices are transmitted to a PS4 console, where display images are generated based on the player commands. The generated images are then compressed and streamed back to the client devices and displayed. The PlayStation games are hosted by Defendant's PS4 consoles.

57.    In addition, Defendant has induced business partners to design PS4 games with Remote Play capabilities and has induced customers to use the Remote Play service provided with the PS4 consoles and with the various client devices executing the Sony Remote Play client software.   These client devices in many instances constitute Sony products, such as the PlayStation Vita and the Sony Xperia products.         (https://www.playstation.com/en-au/get-help/help-library/apps---features/playstation-apps---features/ps4--remote-play-for-pc-and-mac/, last visited July 12, 2019).  In fact, on information and belief, Defendant has required that all PlayStation      games      must      provide      support      for      Remote      Play. (https://www.eurogamer.net/articles/digitalfoundry-sony-mandates-vita-remote-play-for-ps4-games, last visited July 12, 2019).  Like PlayStation Now, and on information and belief, the Sony Remote Play feature also is based on Gaikai technology. (https://www.gamasutra.com/view/news/187022/How_Sonys_PlayStation_4_will_leverage_Gaikais_cloud.php, last visited July 12, 2019).

58.    The acts of infringement by Defendant have caused damage to IPL, and IPL is entitled to recover from Defendant the damages sustained by IPL as a result

of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of IPL's exclusive rights under the '238 Patent by Defendant has damaged and will continue to damage IPL, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

## DEFENDANT'S KNOWLEDGE OF THE PATENTS-IN-SUIT

59.    Gaikai has known of the '520 Patent since at least November 10, 2011. On that date, Gaikai cited the '520 Patent in an Information Disclosure Statement submitted during prosecution of the Gaikai Patent, which is now assigned to SIE.

60.    In addition, the '520 Patent was cited during the prosecution of Sony Computer Entertainment America LLC's U.S. Patent Nos. 8,506,402, 8,560,331, 8,613,673, 8,676,591, 8,840,476, 8,888,592, 8,926,435, 8,968,087, 9,061,207, 9,077,991, 9,084,936, 9,086,995, 9,108,107, 9,138,644, 9,155,962, 9,168,457, 9,192,859, 9,203,685, 9,227,139, 9,272,209, 9,272,220, and 9,314,691. The '826 and '093 Patents were also cited during the prosecution of Sony Computer Entertainment America LLC's U.S. Patent No. 9,086,995.

61.    The '520 Patent was also cited during the prosecution of Sony Interactive Entertainment America LLC's U.S. Patent Nos. 9,352,222, 9,375,635, 9,420,283, 9,446,305, 9,584,575, 9,723,319, 9,756,349, 9,878,240, 9,956,490, 10,039,978, 10,130,891, and 10,201,760. The '826 Patent was cited during the prosecution of Sony Interactive Entertainment America LLC's U.S. Patent Nos. 9,626,308 and 10,002,088. The '093 Patent was cited during the prosecution of Sony Interactive Entertainment America LLC's U.S. Patent No. 9,626,308.

62.    On April 3, 2015, Osman Kent emailed SIE employee David Perry to inform him of the portfolio and provide an opportunity for SIE to acquire the patents. Mr. Kent explained that "these are the foundational patents relating to GPU virtualization and pixel streaming." He also identified four specific patents—U.S. Patent Nos. 7,587,520, 8,131,826, 8,560,643, and 8,667,093—including three of the Patents-in-Suit. Mr. Perry responded to Mr. Kent's email on April 4, 2015, stating

that "I'd be happy to forward the patent numbers to [the Sony Patent team]." On information and belief, Mr. Perry forwarded the patent numbers of the '520, '826, and '093 Patents to SIE's in-house legal department, who elected to disregard those patents.

## JURY DEMAND

63.   IPL demands a trial by jury on all issues.

## PRAYER FOR RELIEF

64.   IPL requests entry of judgment in its favor and against Defendant as follows:

a.   A declaration that Defendant has infringed and is infringing U.S. Patent Nos. 7,587,520, 8,131,826, 8,667,093, and 9,699,238;

b.   A declaration that Defendant's infringement of the Patents-in-Suit was willful;

c.   An order permanently enjoining Defendant, its respective officers, agents, employees, and those acting in privity with it, from further direct and/or indirect infringement of U.S. Patent Nos. 7,587,520, 8,131,826, 8,667,093, and 9,699,238;

d.   An award of damages to IPL arising out of Defendant's infringement of U.S. Patent Nos. 7,587,520, 8,131,826, 8,667,093, and 9,699,238, including enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

e.   An award or attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

f.   Granting IPL its costs and further relief as the Court may deem just and proper.

Dated:  July 25, 2019

By:  /s/ *Kalpana Srinivasan*
Kalpana Srinivasan
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
ksrinivasan@susmangodfrey.com
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Max L. Tribble, Jr.
David Peterson
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002
mtribble@susmangodfrey.com
dpeterson@susmangodfrey.com
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Michael F. Heim
Eric Enger
Blaine Larson
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St., Suite 2100
Houston, Texas 77002
mheim@hpcllp.com
eenger@hpcllp.com
blarson@hpcllp.com
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

COMPLAINT FOR PATENT INFRINGEMENT